# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

CHI ZHANG,

     Plaintiff,

v.

CASE NO. _____

TOURO COLLEGE, TOURO UNIVERSITY;
and TOURO COLLEGE OF OSTEOPATHIC
MEDICINE,

     Defendants.

---------------------------------------------------------X

## <u>DECLARATION OF BRANDT HILL</u>

BRANDT HILL, pursuant to 28 U.S.C. § 1746, declares:

     1.    I am defense counsel for the Defendants Touro College, Touro University, and Touro College of Osteopathic Medicine ("Defendants") in the above-captioned action. I make this declaration in support of Defendants' Notice of Removal. My statements are based on my personal knowledge.

     2.    Attached as Doc. 1 are true and correct copies of the following documents that are identified in the Affidavit of Service filed in the State Court Action, and that were served on Defendants on July 29, 2024, but that were not filed in the State Court Action: Notice of Claim, Student Handbook, Confirmation of Demand Submission and Payment Information.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 16, 2024.

_____
BRANDT HILL

# Doc. 1

AMERICAN ARBITRATION ASSOCIATION
NEW YORK REGIONAL OFFICE
-----------------------------------------------------------------X

In the Matter of the Application of

CHI ZHANG,

Claimant,

for Judgment pursuant to Art. 78,
CPLR, and Common Law Relief

-against-

TOURO COLLEGE AND TOURO COLLEGE
OF OSTEOPATHIC MEDICINE

Respondent,
-----------------------------------------------------------------X

### NOTICE OF CLAIM

Claimant, CHI ZHANG, by his attorney STEWART LEE KARLIN, respectfully shows to this

Court and alleges as follows:

1. Claimant Chi Zhang, Chinese American, (hereinafter at all times mentioned "Claimant or Mr.

   Zhang") was and is a resident of the State of New York, County of New York.

2. Respondent Touro College and Touro College School of Osteopathic Medicine (hereinafter

   "Touro") is duly organized and existing by virtue of the laws of the State of New York and

   upon information and belief is a non-profit corporation and conducts a significant amount of

   business in the State of New York and County of New York.

3. At the time of his enrollment, Claimant was provided by Respondent Touro College School of

   Osteopathic Medicine with Respondent's policies regarding academic criteria for graduation

   and the EEO policies from the school, as well as the appeal procedures in the event of an

   alleged breach of the agreement. This, formed the contract between the Claimant and

1

Respondent. The contract was based on the terms and conditions for graduation that were offered by the Respondent at the time of Claimant's enrollment. Implicit in the contract, is to apply the rules uniformly and not to act arbitrarily and capriciously and discriminatorily when applying the policies to a given situation.

4. Respondent by and through its agents breached the contract in the State of New York, and also violated federal, state and local anti-discrimination laws hereinafter more specifically described.

5. In addition, material representations were made by Respondent as set forth below.

6. In August 2012, Mr. Zhang enrolled in Touro College of Osteopathic Medicine.

7. In the first year, he did not pass three courses, and the school asked him to suspend his studies for one year.

8. Thereafter, Mr. Zhang commenced his second year of medical school in August 2015 with a prospective graduation date of May 2019. In fact, as his second year at school began in August 2015, he asked the school when he would graduate, and the school's answer was 2019.

9. At the time, a student could take the USMLE Step 1 exam up to six times.

10. Prior to 2018, Mr. Zhang had taken the USMLE Step 1 three times, but did not pass it.

11. Mr. Zhang made preparations to continue take the examination but in 2018, however, without warning, the school notified him that he was being dismissed because his graduation deadline was 2018, not 2019 as previously asserted.

12. Respondent closed Mr. Zhang's access to the online exam sites at the school. Thus, he did not have any further opportunity to take the USMLE Step 1 .

13. Respondent subjected Mr. Zhang to disparate treatment as many other (non-Chinese) students were given the opportunity to take the USMLE Step 1 up to six time and up to six years not

2

counting the one year he was not in school. However, Mr. Zhang was dismissed after five years. However, Mr. Zhang was allowed to take the exam only 3 times, half of what he was entitled to. Others had six years, but Zhang was only given five years, one year less than others, not counting the one year he was not in school. This was discriminatory

14. In 2018, Mr. Zhang went to the Dean and asked for another chance to take the exam. The Dean then turned the matter over to the school attorney, who falsely stated that he was not allowed to take the examination again.

15. In addition, the school attorney said "You can transfer to a foreign medical school to study and urge you to do so.

16. The school attorney assured Mr. Zhang that he would be eligible, and his didactic course credits would transfer to another school. However, the DO program Zhang, Chi was enrolled in is available only in the United States. To advise him to transfer to a foreign medical school, which has no such program was an intentional fraud misrepresentation and guaranteed failure for him.

17. Mr. Zhang relied on these specific material representations of the Respondent regarding his ability to transfer to another school and his ineligibility to take the examination.

18. These material representations were relied upon by Claimant in good faith when making his decision to further appeal his dismissal.

19. Claimant's good faith reliance on Respondent's material misrepresentations, cause irreparable damage to Claimant and he lost lifelong dream of becoming a physician.

20. Claimant has exhausted all internal administrative remedies and has satisfied all condition precedent prior to commencement of this suit.

21. In addition, as a result of the foregoing, Respondent breached the enrollment contract (an implied in fact contract between the parties) resulting in Claimant being discharged from the program and being damaged, Respondent acted arbitrarily and capriciously and in bad faith and violated federal state and local discrimination laws. Touro did not have a valid reason to dismiss him.

22. Respondent breached its own terms and conditions set forth for graduation and acted arbitrarily and capriciously, irrationally, and in bad faith toward Claimant.

23. Despite the fact that Claimant met all the academic requirements, and financial.
requirements, Respondent breached the agreement and has otherwise acted arbitrarily and capriciously, irrationally, and in bad faith, by dismissing Claimant.

24. An Article 78 proceeding is appropriate in this case, where Claimant is seeking an order of reinstatement, as well as damages. See Eidlisz v New York Univ., 15 N.Y.3d 730, 731 (2010) ("plaintiff seeks an order compelling defendants to award him a degree"); Tedeschi v. Wagner Coll., 49 N.Y.2d 652, 657 (1980) ("She asked for an order reinstating her and for damages."); Matter of Kickertz v New York Univ. 30 Misc.3d 1220(A), 924 N.Y.S.2d 310 (Table), 2011 WL 420690 (N.Y. Sup. Ct. 2011) (seeking reinstatement through Article 78 and damages through plenary action), reversed in part 2012 WL 4815522, 2012 N.Y. Slip Op. 06834 (1st Dep't Oct. 11, 2012) (granting Article 78 petition and noting that plenary action remains sub judice); Rizv v. New York College of Osteopathic Medicine of New York Institute of Technology, 98 A.D.3d 1049, 1051 (2d Dep't 2012) (Article 78 commenced to "reinstate him as a student" and if he passes his examination, "to award him a degree").

25. In an Article 78 proceeding for judicial review of a determination of an educational institution, the standard to be applied is whether the action taken by the institution is arbitrary or

capricious, or without rational basis or whether the institution has acted in good faith Tedeschi v. Wagner College, *supra;* Pell v. Board of Educ. Union Free Sch. Dist. No. 1, 34 N.Y.2d 222, 356 N.Y.S.2d 833, 313 N.E.2d 321 [1974]. The arbitrary or capricious test has been said to chiefly relate to whether a particular action should have been taken, is justified or is without a foundation in fact or without a sound basis in reason.

26. It is a matter of essential fairness in the somewhat one-sided relationship between the institution and the individual that when a university has adopted a rule or guideline establishing a disciplinary procedure, that such procedure be substantially observed and that in conducting the inquiry, the university must proceed in good faith. *See Tedeschi v. Wagner College*, 49 N.Y.2d 652, 427 N.Y.S.2d 760, 404 N.E.2d 1302 (1980); Matter of Gray v. Canisius Coll. of Buffalo, 76 A.D.2d 30, 430 N.Y.S.2d 163 [1980].

27. It is well established that judicial review of determinations of educational institutions as to the academic performance of their students can be challenged. The academic institution's academic determination must not be arbitrary and capricious, irrational, made in bad faith, unconstitutional, or contrary to statute. Tedeschi v. Wagner Coll., 49 N.Y.2d 652, 427 N.Y.S.2d 760, 404 N.E.2d 1302 (1980); Matter of Olsson v. Board of Higher Educ. of City of N.Y., 49 N.Y.2d 408, 413-414, 426 N.Y.S.2d 248, 402 N.E.2d 1150 (1980); Matter of Susan M. v. New York Law School, 76 N.Y.2d 241, 556 N.E.2d 1104, 557 N.Y.S.2d 297 (1990).

28. "When a university has not substantially complied with its own guidelines or its determination is not rationally based upon the evidence, the determination will be annulled as arbitrary and capricious." Kickertz v. New York Univ., 99 A.D.3d 502, 507- 08, 952 N.Y.S.2d 147, 153 (1st Dep't 2012), appeal dismissed, 20 N.Y.3d 1004, 983 N.E.2d 765 (2013) (quoting Matter of Hyman v. Cornell Univ., 82 A.D.3d 1309, 1310, 918 N.Y.S.2d 226 (3d Dept. 2011).

29. Further, it well settled law that "when a student is admitted to a university, an implied contract arises between the parties which states that if the student complies with the terms prescribed by the university, he will obtain the degree he seeks". Vought v. Teachers Coll., Columbia Univ., 127 A.D.2d 654 (2nd Dept. 1987). The rights and obligations of the parties to this contractual relationship flow from "the university's bulletins, circulars and regulations made available to the student, [which] become a part of this contract. Id., *see also* Sweeney v. Columbia University, 704 N.Y.S.2d 617 (2nd Dept. 2000).

30. Among the rights held to be enforceable pursuant to this implied contract, "when a university has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion that procedure must be substantially observed.'" Tedeschi v. Wagner Coll., 49 N.Y.2d 652, 660 (1980); see also, e.g. McConnell v. Le Moyne College, 25 A.D.3d 1066, 1068-1069, 808 N.Y.S.2d 860, 862 (4th Dep't 2006); Weidemann v. State University of New York College at Cortland, 188 A.D.2d 974, 975- 976, 592 N.Y.S.2d 99, 101 (3d Dep't 1992). A student may have a breach of contract remedy against a university, based on an alleged adverse academic decision, where the challenged determination was arbitrary and capricious, irrational, made in bad faith or contrary to Constitution or statute. Here the Respondent's action was arbitrary and capricious and in bad faith.

31. While educational organizations may to a large extent order their own affairs, their conduct may not be arbitrary or capricious or violative of applicable constitutions, bylaws, rules or regulations. Christ The King Regional High School v. Catholic High Schools Athletic Ass'n, Diocese of Brooklyn, 624 N.Y.S.2d 755, N.Y. Sup., (1995).

32. Based on the foregoing Respondent breached the implied in fact contract as well as the Memorandum of Understanding and acted arbitrarily and capriciously and in bad faith by

6

compelling Mr. Zhang to take his second year curriculum as a condition for re-admittance to Touro.

33. In this case, Touro's actions towards Claimant are "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness." Kickertz v. New York Univ., 99 A.D.3d 502, 511, 952 N.Y.S.2d 147, 155-56 (2012) appeal dismissed, 20 N.Y.3d 1004, 983 N.E.2d 765 (2013) (quoting Matter of Pell v. Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 N.Y.2d 222, 233, 356 N.Y.S.2d 833, 313 N.E.2d 321 (N.Y.1974)).

34. This is the first application for relief requested herein.

## AS AND FOR A SECOND CAUSE OF ACTION- TITLE VI DISCRIMINATION

35. Claimant hereby repeats and re-alleges each allegation in each numbered paragraph above.

36. Title VI prohibits discrimination on the basis of an individual's race in programs and activities receiving federal financial assistance.

37. Mr. Zhang is Chinese and as such, is a member of a protected class.

38. Touro's dismissal was a pretext for national origin discrimination.

39. Upon information and belief, other similarly situated non-Chinese students were provided up to six times to pass the examination and up to six years to graduate.

40. Touro discriminated against Mr. Zhang in violation of Title VI by denying him the rights guaranteed to all Touro students.

41. As a result of Touro's discriminatory acts, Mr. Zhang has suffered and will continue to suffer substantial losses, including tuition payments and other student benefits and has suffered other monetary and compensatory damages, for *inter alia*, mental anguish, emotional distress, humiliation and loss of reputation.

7

## AS AND FOR A THIRD CAUSE OF ACTION- FRAUD

42. Claimant hereby repeats and re-alleges each allegation in each numbered paragraph above.

43. Respondent made material misrepresentations to Claimant.

44. Claimant in good faith relied upon those material misrepresentations made by Respondent.

45. The Respondent's misrepresentation caused damage to Claimant.

46. In order to induce Claimant to leave the school, the school representative stated "You can transfer to a foreign medical school and continue your studies. He also stated that Claimant had six more months to study at the school and thus needed to transfer quickly.

47. Claimant located a foreign medical school, Ross University School of Medicine. Claimant was assured that he would get into this program and be able to transfer. Plaintiff was required to obtain three recommendations and received two recommendations from physicians and was assured by the school that the Dean would forward the third recommendation which upon information and belief was forwarded to the school. However, the transfer was not approved.

48. As a result of Plaintiff's good faith reliance of the material misrepresentations made by Respondent, Plaintiff was damaged.

WHEREFORE, Claimant demands damages and equitable relief against the Respondents, including but not limited to the following:

    1. Granting compensatory damages for injuries and accompanying pain and suffering, tuition reimbursement, career lost earning as a physician, and other damages sustained by plaintiff;

    2. Injunctive relief compelling Touro to readmit Claimant as a third medical student, or in the alternative readmit Claimant as a first year medical student;

    3. Attorneys fees, costs and disbursements;

8

4. Any other relief that is just and equitable.

Dated: New York, New York
          July 24, 2024

Respectfully submitted,

STEWART LEE KARLIN
LAW GROUP, P.C.

Stewart Lee Karlin, Esq.
Attorneys for Claimant
111 John Street, 22nd Floor
New York, NY 10038
(212) 792-9670

9



# TOURCOLLEGE
## OF OSTEOPATHIC MEDICINE

New York

# STUDENT HANDBOOK

*Effective July 1, 2013*

Committee or a Dean at the time of the initial decision.

3. Procedural error.

While the appeal is pending, the status of the student will not be altered.

## Conduct of Hearings

1. The hearing shall take place before a Hearing Committee composed of three faculty or administrative members appointed by the Dean of Student Affairs.
2. The hearing will be open to the student and appointed Hearing Committee; it is closed to all other individuals. The Committee may hear other people of its choosing who may be knowledgeable about the issue(s) under consideration, and may investigate relevant written reports, discussions with involved parties, examinations, papers, or other related documents.
3. A quorum (more than half) of this Committee must be present in order to conduct official business and render a decision.
4. All decisions shall be made by majority vote, the mechanism to be determined by Committee membership.
5. The student has the right to appear in person before the Committee in order to present his/her case.
6. Representation by an attorney will not be permitted.

Following review, the Student Appeals Committee will recommend to the Dean to:

1. Uphold the Decision; or
2. Modify the original decision, giving the text of the modified recommendation; or
3. Reevaluate the earlier decision based on material information either unknown or not previously considered, and consider convening another hearing.

In consideration of the recommendation of the Student Appeals Committee, the Dean may include examination of the related documents, discussions with involved parties and/or the student, or others at the Dean's discretion.

A Dean will notify the student in writing of the appeal decision.

The decision of the Dean shall be final.

## Status of Student Pending Action
Pending action on charges, the status of the student will not be altered except for reasons of his/her physical and emotional well-being, or for reasons relating to the safety of other students and College personnel.

However, if a student is suspended, for any reason, all as-yet-undisbursed financial aid will be withheld unless or until the appeals process is resolved by reinstatement. If reinstated, the financial aid funds can be released to the student. If the student is dismissed, the funds will be returned to the proper agency or lender.

## Order of Precedence, Incorporation of Policies by Reference and Arbitration of Disputes
The policies and procedures set forth in this section and elsewhere in this Handbook are presented in their entirety on the Touro College website, and are excerpted here as an overview for student reference. Touro College students, faculty and staff are expected to abide by all Touro College policies

85

and regulations including those set forth on the Touro College website. In the event of an inconsistency between the College Catalog and this Student Handbook, the terms of the College Catalog will take precedence.

Touro College's arbitration policy was created with the intention of providing a program for the quick, fair, accessible, and inexpensive resolution of Disputes (see definition below) between Touro College and Touro College's current and former students (as well as applicants) related to or arising out of a current, former or potential academic relationship with Touro College. The policy is intended to provide an exclusive mechanism for the final and binding resolution of all Disputes that cannot otherwise be resolved internally through the academic and disciplinary methods described elsewhere in this Handbook. It is not intended either to curtail or extend substantive rights available under applicable law, except to limit Touro College's damages awardable to students in any and all events, and to limit the amount of time an aggrieved student has to file for arbitration. The policy should be interpreted in accordance with these purposes.

A student's acceptance, registration, enrollment, matriculation and/or continued enrollment and matriculation at Touro College acts as his or her consideration and consent to these terms. Each student agrees that he or she will pay for their own fees and expenses related to or arising out of the arbitration.

All arbitrations of Disputes shall be exclusively conducted and heard by the American Arbitration Association ("AAA"), or its successor, before a single arbitrator who shall be an attorney. "Dispute" means all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law or theory; the application, potential enrollment, enrollment, matriculation, continued enrollment and matriculation, and graduation, suspension, dismissal, expulsion, separation or any other academic, disciplinary or other action or termination of such student with Touro College; any other matter related to or concerning the relationship between the student and Touro College including, by way of example and without limitation, allegations of: discrimination based on race, religion, national origin, age, veteran status or disability, sex (including sexual harassment), gender, sexual orientation, retaliation, defamation, infliction of emotional distress, The Americans With Disabilities Act of 1990, Sections 1981 through 1988 of Title 42 of the United States Code, The Immigration Reform and Control Act of 1986, New York State Human Rights Law, New York City Human Rights Law, or any other federal, state or local civil, Family Educational Rights and Privacy Act of 1974 (FERPA), Campus Sex Crimes Prevention Act, Title VI or Title IX of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, as amended, as well as any other law related to students, not-for-profits and higher educational institutions. Disputes do not include collections actions of tuition or other fees payable by the student and owed to Touro College.

Touro College's liability (as well as its faculty, staff, and third parties action by, through or on its behalf) is limited in all respects, no matter the cause of action or theory of liability, to the amount of tuition actually paid by the student in the one year prior to which the claim is made. No award of incidental, consequential, punitive or lost profits damages may be awarded by the arbitrator, nor may the arbitrator certify a class action or otherwise allow an arbitration demand on behalf of a class. Requests for expedited binding arbitration must be filed with the other party and with AAA within ninety (90) calendar days after the claim or dispute arises or the act or acts as to which arbitration is brought occur. If a student fails to file a request for arbitration with Touro College and AAA within ninety (90)

calendar days after the claim or Dispute arises, that claim or dispute will be conclusively resolved
against the student even if there is an applicable statute of limitations that may have given the student
more time, Any judgment upon the award rendered by the arbitrator may be entered in any court of
competent jurisdiction.

If any provision of the policy is determined to be invalid or unenforceable in any jurisdiction, the
remaining provisions shall remain in full force and effect and shall be liberally construed so as to
effectuate the purpose and intent of the policy. This policy precludes litigation in any court of any claim
that could be arbitrated, if for any reason this arbitration clause is declared unenforceable, the student
nevertheless waives the right to a jury trial and the ability to bring a class action with respect to
complaint or action filed in a court of competent jurisdiction and within the ninety (90) day limitations
period described above.

### Graduation Requirements
A student will be recommended for the degree of Doctor of Osteopathic Medicine provided the candidate
satisfies all of the following criteria:

1. Has completed at least four years in an accredited osteopathic medical college or its equivalent.
2. Has been enrolled in the Touro College of Osteopathic Medicine during the final two academic
   years prior to graduation.
3. Is not on provisional academic status, has completed all prescribed academic requirements having
   remediated all U grades on all academic courses and core rotations achieving a cumulative grade
   point average of 2.0 or higher, has no outstanding grade which is incomplete and has a passing
   grade for all core clinical rotations.
4. Has passed Level I and Level II (both CE and PE) of the COMLEX USA Examinations of the National
   Board of Osteopathic Medical Examiners.
5. Has performed and behaved in a manner which is ethical, professional, and consistent with the
   practice of osteopathic medicine.
6. Has complied with all the legal and financial requirements of Touro College of Osteopathic
   Medicine.
7. Attends the graduation ceremony IN-PERSON, unless special permission has been granted by the
   Dean of the Touro College of Osteopathic Medicine which will only be granted where satisfactory
   evidence of medical or other emergency has been provided.
8. Is at least 21 years of age.
9. Has satisfactorily passed requisite examinations.

Diplomas are issued upon satisfactory completion of the above requirements as determined by the
Chief Academic Officer.

### Attendance at the Graduation Ceremony
Permission to attend and march in the graduation ceremony may be granted to students who are
scheduled to complete all graduation requirements by September 1st. Such permission is a courtesy,
and must not be construed as having successfully fulfilled requirements for graduation from the Touro
College of Osteopathic Medicine.

 Gmail

Stewart Karlin <stew@stewartkarlin.com>

## CONFIRMATION: DEMAND SUBMISSION
1 message

**noreply@jamsaccess.com** <noreply@jamsaccess.com>
To: slk@stewartkarlin.com

Thu, Jul 25, 2024 at 3:45 PM

# CONFIRMATION: DEMAND SUBMISSION

Your demand for arbitration was received. The reference number
for this matter is **#5425002583** .

**Please note that this demand, including any/all attachments,
must be served on all parties. Once you have served the
demand, a copy of the proof of service must be provided to
JAMS. Click here to upload the proof of service to JAMS
Access.**

Below you will have access to the full submitted information as well
as **all uploaded documents.**

> LOGIN TO SEE CASE SUBMISSION

## Submission Information

Stewart Karlin
111 John St. 22nd Floor
New York
NY
10038
slk@stewartkarlin.com

**JAMS Resolution Center**

The Law Offices of Stewart Lee Karlin, P.C. Mail - CONFIRMATION: DEMAND SUBMISSION

New York, New York

**Requested Hearing Location**

**Arbitration Rules**

JAMS Streamlined Arbitration Rules and Procedures

**Filling & Submission Fees Details:**

Consumer pays no more than $250 . Company pays the balance of filing fee.

Consumer or Employment Arbitration

| Claimants | Claimant Representative(s) |
|---|---|
| 1.  Chi Zhang | A.  Stewart Karlin |
| Stewart Lee Karlin Law Group, PC | Stewart Lee Karlin Law Group, PC |
| 112 Bowery Street, Apt 1025 | 1812544NY |
| New York | 111 John Street, 22nd Floor |
| NY | New York |
| 10013 | NY |
| 646-330-0707 | 10038 |
| Miaolin5117@gmail.com | 2127929670 |
|  | slk@stewartkarlin.com |

| Respondent(s) | Respondent Representative(s) |
|---|---|
| 1.  Stewart Karlin | |

TOURO COLLEGE AND TOURO
COLLEGE OF OSTEOPATHIC
MEDICINE
230 W 125th St 3rd Floor New
York, NY 10027
New York
NY
10027
(212) 851-1199

## Nature of Dispute

**Claims and Relief Sought by Claimant**

**Mediation in advance of the arbitration is desired.**

**Amount in Controversy (U.S. dollars)**  500000

**Related Documents**

## Agreement

There have been many handbooks, but all to the Claimant's knowledge, have had an arbitration clause. The handbook in 2013 at the commencement of Claimant's enrollment appears on pages 30-31.

The Law Offices of Stewart Lee Karlin, P.C. Mail - CONFIRMATION: DEMAND SUBMISSION

N

By checking the box to the left, Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter. Respondent shall indicate not later than seven (7) days from the date this Demand is served whether it agrees to the Expedited Procedures.

**Related Documents**

notice of claim (2).pdf                    Claims/Responses/Counterclaims

## Consumer & Employment

This is a **CONSUMER** ARBITRATION

Please do not reply directly to this email as you will not receive a response. For assistance, please visit our Contact Us center at access.jamsadr.com/support or call your Case Manager

 Gmail

Stewart Karlin <stew@stewartkarlin.com>

---

**Payment Information for JAMS, Inc.**
1 message

**billpay@paymentus.com** <billpay@paymentus.com>                     Thu, Jul 25, 2024 at 3:45 PM
Reply-To: Billpay@paymentus.com
To: slk@stewartkarlin.com

 **Local Solutions.**
**Global Reach.**

# Payment Information for JAMS, Inc.

**Dear Stewart Karlin,**
We are pleased to confirm your payment with JAMS, Inc. Below is the summary of your payment transaction. Your payment has been received and will be reflected in your account. Thank you for your continued relationship with JAMS, Inc.

JAMS reference number:        **5425002583**

Confirmation number:          **1488204805**

Invoice number: (if applicable)

Payment date:                 **Jul 25, 2024**

Payment amount:               **250.00**

Processing fee:               **7.48**

Total amount charged:         **257.48**

Total invoice amount: (if applicable)

**Contact Information**

First name:            **Stewart**

Last name:             **Karlin**

Daytime phone number:  **(212)792-9670**

Email:                 **slk@stewartkarlin.com**

**Account Information**

Payment type:          **Arbitration Form**

Zip code:              **10038**

Payment method:        **Credit Card**

Date due:              **Upon Receipt**

**Payment Method
Information**

Card type:             **Visa**

Card number:           **\*\*\*\*\*\*\*\*\*\*\*\*1797**

Card holder name:      **Stewart Karlin**